

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 6, 2023

Bradley J. Bondi
Paul Hastings LLP
200 Park Avenue
New York, NY 10165

Adam Louis Schwartz
Vedder Price P.C.
600 Brickell Avenue
Suite 1500
Miami, FL 33131

**Re: United States v. Shakeeb Ahmed, S1 23 Cr. 340 (VM)**

Dear Mr. Bondi and Mr. Schwartz:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Shakeeb Ahmed ("the defendant") to Count One of the above-referenced Superseding Information (the "Information"). Count One of the Information charges the defendant with accessing a protected computer without authorization in furtherance of fraud, in violation of Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A), and 2. Count One carries a maximum term of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution as specified below.

In addition to the conduct charged in Count One of the Information, the defendant admits to and stipulates to the following facts [1] and agrees that this conduct is either relevant conduct, pursuant to U.S.S.G. § 1B1.3, or other conduct of the defendant, pursuant to U.S.S.G. § 1B1.4 and 18 U.S.C. § 3553(a), that the Court may consider at the time of sentencing for the purposes of the Guidelines calculation, the Section 3553(a) factors, forfeiture, and restitution:

Nirvana Finance ("Nirvana") was a decentralized finance protocol that bought and sold its cryptocurrency token, ANA. Nirvana was designed so that when a user purchased a substantial quantity of ANA, the price of ANA increased, and when a user sold a substantial quantity of ANA, the price of ANA decreased. On or about July 28, 2022, the defendant schemed to defraud Nirvana by executing a hack in which he (i) took out a flash loan for approximately $10 million; (ii) used those funds to purchase ANA from Nirvana; (iii) used an exploit he discovered in

---

[1] To the extent some of the information is outside of the defendant's knowledge, he need not specifically allocute to it at his plea.

2023.02.10

Nirvana's smart contracts to purchase the ANA at its initial, low price, rather than at the higher price that Nirvana was designed to charge him in light of the size of his purchase; (iv) when the price of ANA updated to reflect his large purchase, he resold the ANA he had purchased to Nirvana at the new, higher price, resulting in a profit to the defendant of approximately $3,600,000; (v) the defendant repaid the flash loan; (vi) Nirvana offered the defendant a "bug bounty" of as much as $600,000 to return the stolen funds; (vii) the defendant instead demanded a "bug bounty" of $1,400,000, did not reach agreement with Nirvana, and kept all the stolen funds; (viii) the defendant engaged in a sophisticated series of cryptocurrency transactions in an attempt to launder the stolen funds, including through cryptocurrency mixers such as Samourai Whirlpool; and (ix) the $3,600,000 the defendant stole represented approximately all the funds possessed by Nirvana, which as a result shut down shortly after.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for (i) accessing a protected computer without authorization in furtherance of fraud and stealing money from a cryptocurrency exchange (the "Crypto Exchange" in the Information) in approximately July 2022, as charged in Count One of the Information; and (ii) for hacking and stealing funds from Nirvana in approximately July 2022, as set forth above, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges the defendant is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count One of the Indictment and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 1030(i), a sum of money equal to $12,336,749.11 in United States currency, representing proceeds traceable to the commission of said offense (the "Money Judgment"); and (ii) all right, title and interest of the defendant in the following specific property: (a) cryptocurrencies in the amounts of approximately 2,604,731 DAI, 5,513.838 XMR, 23.663 BTC, 15.912 Wrapped BTC, 300,192 USDC, 6.221425 ETH, and 8.8452 SOL; and (b) cryptocurrencies in the amount of 40.26 XMR, which were seized by the Government on or about July 11, 2023 (collectively the "Specific Property"). The defendant further agrees to forfeit as a substitute asset pursuant to Title 21, United States Code, Section 853(p) $100,000 in United States currency deposited by the Defendant with the Clerk of the Court of the Southern District of New York which secured his personal recognizance bond as a condition of his release in this case (the "Substitute Asset"). The defendant agrees that the defendant will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property or Substitute Asset and will not cause or assist anyone else in doing so. The defendant also agrees to take all necessary steps to pass clear title to the Specific Property and Substitute Asset to the United States, including, but not limited to, the execution of all necessary documentation. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment,

or any other penalty the Court may impose upon him/her in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.

The defendant further agrees to make restitution totaling $5,071,074.23 as follows: (i) in the amount of $1,500,000 to the Crypto Exchange described in the Information, and (ii) in the amount of $3,571,074.23 to Nirvana, in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664. The restitution amount shall be paid according to a plan established by the Court. The defendant will be given credit against this restitution amount for any payments made prior to sentencing, as verified by the Office.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

**A. Offense Level**

1. Pursuant to U.S.S.G. § 2B1.1(a)(2), because the offense of conviction has a statutory maximum term of imprisonment of less than 20 years, the base offense level is six.

2. Pursuant to the table at U.S.S.G. § 2B1.1(b)(1)(K), because the loss is greater than $9,500,000 but less than $25,000,000, 20 levels are added.

3. Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(iii), because the offense resulted in substantial financial hardship to one or more victims, two levels are added.

4. Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), because the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, two levels are added.

5. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 27.

**B. Criminal History Category**

Based upon the information now available to this Office (including representations by the defense), the defendant has zero prior convictions and zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is I.

**C. Sentencing Range**

Based upon the calculations set forth above, the defendant's applicable sentencing range is 70 to 87 months' imprisonment. Pursuant to U.S.S.G. § 5G1.1(a), because the statutorily authorized maximum term of imprisonment for Count One is 60 months, which is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence of 60 months shall be the guideline sentence (the "Stipulated Guidelines Sentence"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At offense level 27, the applicable fine range is $25,000 to $250,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Sentence set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Sentence based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Sentence (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from

those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines sentence, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that the defendant's entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw the defendant's plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence at or below the Stipulated Guidelines Sentence of 60 months' imprisonment and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Sentence. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $250,000, and the Government agrees not to appeal any fine that is greater than or equal to $25,000. The defendant also agrees not to appeal or bring a collateral challenge of any restitution amount that is less than or equal to $5,071,074.23, and the Government agrees not to appeal any restitution amount that is greater than or equal to $5,071,074.23. The defendant also agrees not to appeal or bring a collateral challenge of any forfeiture amount that is less than or equal to $12,336,749.11, and the Government agrees not to appeal any forfeiture amount that is greater than or equal to $12,336,749.11. The defendant also agrees not to appeal or bring a collateral challenge to any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that the defendant has accepted this Agreement and decided to plead guilty because the defendant is in fact guilty.

By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material (other than information establishing the factual innocence of the defendant), including *Jencks* Act

material, material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if the defendant is not a citizen of the United States, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, the defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if the defendant's naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that the defendant has discussed the possible immigration consequences (including removal or denaturalization) of the defendant's guilty plea and conviction with defense counsel. The defendant affirms that the defendant wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw the defendant's guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge the defendant's conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the defendant's guilty plea and conviction.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

The parties understand that this Agreement reflects the special facts of this case and is not intended as precedent for other cases.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or

conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By: /s/ Kevin Mead
DAVID FELTON / KEVIN MEAD
Assistant United States Attorneys
(212) 637-2299/2211

APPROVED:

SAGAR K. RAVI
Chief, Complex Frauds & Cybercrime Unit

AGREED AND CONSENTED TO:

SHAKEEB AHMED          12/10/23
                       DATE

APPROVED:

BRADLEY J. BONDI       12/11/2023
ADAM LOUIS SCHWARTZ    DATE
Attorney for Shakeeb Ahmed

2023.06.20